**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Yvonne Alvarez, | No. CV-20-00264-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Diana Yvonne Alvarez's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 23, "Def. Br."), and Plaintiff's Reply Brief (Doc. 31, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and now reverses and remands the Administrative Law Judge's decision (R. at 14–26) as upheld by the Appeals Council (R. at 1–3).

**I.  BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on December 10, 2015, for a period of disability beginning on June 14, 2014. (R. at 14.) Her claim was denied initially on May 6, 2016, and upon reconsideration on November 22, 2016. (R. at 14.) Plaintiff appeared before the ALJ for a hearing regarding her claim on November 5,

2018, which the ALJ denied on January 15, 2019. (R. at 14, 26, 32–55.) On December 6, 2019, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: obesity, diabetes, neuropathy, mild knee arthritis, bilateral carpal tunnel syndrome, status post cervical fusion, and lumbar degenerative disc disease. (R. at 17.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 19, 25–26.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 19.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can occasionally use bilateral foot controls; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps or stairs; occasionally balance; frequently stoop; occasionally crouch; occasionally kneel; frequently reach overhead bilaterally; frequently handle, finger, and feel bilaterally; have occasional exposure to non-weather-related extreme cold and extreme heat; and have occasional exposure to dangerous machinery with moving mechanical parts and unprotected heights.

(R. at 20.) Accordingly, the ALJ found that Plaintiff could perform past relevant work as an administrative secretary. (R. at 25.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.     ANAYSIS**

First Plaintiff argues the ALJ erred in assigning little weight to Dr. Maninder Kahlon's and PA Doris Ginger Reeves's medical opinions and in assigning substantial weight to the consultative examiners' medical opinions. (Pl. Br. at 14–20.) Second,

Plaintiff argues the ALJ erred in rejecting Plaintiff symptom testimony because the ALJ did not provide sufficient reasons for rejecting the testimony. (Pl. Br. at 20–26.) The Court finds the ALJ did not err in assigning weight to the medical opinions, but the ALJ did err in rejecting Plaintiff's symptom testimony because the ALJ only relied on conflicting medical evidence to make this finding.

> **A. The ALJ provided specific and legitimate reasons in giving little weight to the medical opinions of Dr. Kahlon and PA Reeves and in assigning weight to the consultative examiners.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ provided specific and legitimate reasons for rejecting the medical opinions of Dr. Kahlon and PA Reeves.[1] Plaintiff addressed both Dr. Kahlon's and PA Reeves' medical opinions and the ALJ's decision to reject them together in the opening brief and the Court will do the same here. (Pl. Br. at 16.) The ALJ gave little weight to both opinions because they were inconsistent with the medical record as a whole, were based on Plaintiff's subjective complaints, were presented in a checked box form[2], and the medical opinions are extreme. (R. at 24–25, 598-602, 1248–52.) Dr. Kahlon stated that Plaintiff was limited to less than sedentary work with sitting limitations, required an assistive device for ambulation, could not perform postural activities, had no manipulative limitations, and had environmental limitations. (R. at 25.) The ALJ found that Dr. Kahlon's medical opinion is inconsistent with the medical record as a whole because Dr. Kahlon stated Plaintiff required use of an assistive device but that no evidence in the record showed Plaintiff required use of an assistive device and examinations usually showed Plaintiff presented with normal gait. (R. at 25.) Similarly, the ALJ noted that PA Reeves simply marked that Plaintiff's ability to stand and walk was marked "No" on a checkbox with no explanation provided. (R. at 24, 598.) Though the ALJ provides no explanation for how Dr. Kahlon's and PA Reeves's opinions are based on Plaintiff's subjective complaints and are extreme, the ALJ provided evidence in the opinion to show that Plaintiff usually walked with normal gait, which contradicted Dr. Kahlon's and PA Reeves's opinions.

---

[1] The Court agrees with Defendant that Plaintiff incorrectly characterizes PA Reeves as a treating provider under 20 C.F.R. § 404.1527(c), which only applies to medical doctors and "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a). The ALJ was not held to the same standard in discounting PA Reeves' medical opinion. *See Burkett v. Saul*, 806 Fed. Appx. 509, 512 (9th Cir. 2020) ("A physician assistant is an 'other source' and is 'not entitled to the same deference' as a licensed physician. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). (citing 20 C.F.R. §§ 404.1513(a), (d). An ALJ may discount other-source opinions so long as they provide a germane reason to do so.").

[2] Plaintiff correctly points out that providing an opinion in check box form is not a valid reason for rejecting a medical opinion. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.). The Court does not accept this reason provided by the ALJ as persuasive in rejecting the medical opinions of Dr. Kahlon and PA Reeves and will address the other reasons the ALJ provided.

Dr. Kahlon opined that Plaintiff required an assistive device to ambulate; could never climb, balance, stoop, kneel, crouch, or crawl; could lift and carry less than 10 pounds occasionally and frequently; and could sit for only two to four hours in an eight-hour day (R. at 1248–52.) Plaintiff argues the record shows a recommendation that she use a cane more often because she is unsteady on her feet. (R. at 898, 904.) However, Plaintiff's medical providers regularly observed that she walked normally without an assistive device, and she had normal to only mildly reduced muscle strength, range of motion, and motor function in her arms and legs (R. at 288, 309, 345–46, 356, 359–60, 363–64, 391, 432, 479–80, 482–83, 490, 510, 524–25, 530–31, 536–37, 542–43, 548–49, 555–56, 562–63, 570, 577–78, 584–85, 591–92, 606, 618, 705, 722, 746, 763–64, 776–77, 799–800, 811, 813, 823–24, 835–36, 851–52, 863–64, 879, 892–93, 902–03, 917, 926–27, 942, 956, 969–70, 983–84, 1001–02, 1011–12, 1028–29, 1037–38, 1129–30, 1136–37, 1139–40, 1146–47, 1160, 1166, 1171–72, 1182, 1185.) Defendant also points out that Dr. Kahlon even observed Plaintiff walked normally and had normal strength in her neck, back, arms, and legs on numerous occasions. (R. at 345–46, 356, 359–60, 479–83, 524–25, 1129–30, 1136–37, 1139–40, 1146–47.)

PA Reeves opined that Plaintiff could occasionally lift less than 10 pounds but she could never carry any amount of weight frequently; she could never stand, walk, or sit for any amount of time; and she could never climb, balance, stoop, kneel, crouch, or crawl. (R. at 598–99.) As previously stated, the record shows comprehensive evidence of medical providers indicating Plaintiff walked normally and had normal to mildly reduced muscle strength, range of motion, and motor function in her arms and legs (R. at 288, 309, 345–46, 356, 359–60, 363–64, 391, 432, 479–80, 482–83, 490, 510, 524–25, 530–31, 536–37, 542–43, 548–49, 555–56, 562–63, 570, 577–78, 584–85, 591–92, 606, 618, 705, 722, 746, 763–64, 776–77, 799–800, 811, 813, 823–24, 835–36, 851–52, 863–64, 879, 892–93, 902–03, 917, 926–27, 942, 956, 969–70, 983–84, 1001–02, 1011–12, 1028–29, 1037–38, 1129–30, 1136–37, 1139–40, 1146–47, 1160, 1166, 1171–72, 1182, 1185.) PA Reeves noted that Plaintiff had no difficulty walking or walked normally in July 2015, June 2016, and June

2017. (R. at 391, 490, 1182, 1185.) On the form PA Reeves filled out to support Plaintiff's disability application, however, she stated that Plaintiff could not sit, stand, or walk. (R. at 598.) Other physicians indicated Plaintiff should increase her activity to avoid "prolonged bed rest." (R. at 533, 539, 545, 552, 559, 565, 572, 580, 587, 5993, 724, 737, 750–51, 769, 780, 791, 803, 827, 839, 855, 867, 882, 896, 906, 921, 931, 945–46, 959, 973, 987, 1005, 1014, 1032, 1040–41, 1049.) The ALJ provided specific and legitimate reasons for rejecting the medical opinions of Dr. Kahlon and germane reasons for rejecting the medical opinion of PA Reeves. The evidence overwhelmingly showed their opinions about Plaintiff's ability to walk were contradicted in the medical record.

Finally, Plaintiff argues the ALJ erred in affording substantial weight to the mental health and physical health consultative examiners. (Pl. Br. at 19–20.) The mental health consultative examiner found that Plaintiff had no impairments in understanding and memory, she sustained concentration and persistence, and she adapted to change. (R. at 24, 458–61.) The ALJ acknowledged that the mental health consultative examiners opinion was vague, but nonetheless, it was consistent with the record as a whole, examinations showed normal findings regarding Plaintiff's mental health, and Plaintiff had minimal mental health treatment. (R. at 24.) The ALJ provided specific and legitimate reasons for assigning substantial weight to the mental health consultative examiner.

The physical health consultative examiner found Plaintiff could perform less than sedentary work with postural, manipulative, and environmental limitations. (R. at 24, 464–73.) The ALJ gave little weight to the opinion that Plaintiff could do less than sedentary work because it was not consistent with the medical record, and the ALJ explained that Plaintiff's impairments do cause limitations but Plaintiff also had consistent normal findings in physical examinations, including normal gait. (R. at 24.) The ALJ provided specific and legitimate reasons for giving little weight to the consultative examiner's opinion that Plaintiff could do less than sedentary work.

**B.  The ALJ erred in rejecting Plaintiff's symptom testimony because the finding relied solely on an insufficient basis—Plaintiff's symptom testimony conflicting with the medical evidence.**

Plaintiff contends the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 20–26.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20

C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 21.)

First, the ALJ did not provide "specific, clear and convincing" reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony because of Plaintiff's activities of daily living ("ADLs"). *See Molina*, 674 F.3d at 1112. The ALJ goes into great detail discussing Plaintiff's medical evidence and then ends the analysis by quickly stating that "[Plaintiff] also stated she could perform some [ADLs] including preparing meals, doing some housework, and shopping in stores." (R. at 23.) The exhibits the ALJ cites to in support of this statement actually state the opposite. Plaintiff indicated she can no longer work, do household chores, care for grandchildren, cook, walk, swim, and drive. (R. at 190, 235–37.) The ALJ noted that Plaintiff indicated medication was effective in reducing her pain and improving her functioning and that radiofrequency ablation offered some relief, but again, the exhibits the ALJ cites to do not directly support this statement. (R. at 45, 740, 770.) The ALJ also points out that one provider noted Plaintiff exhibited "excessive and inappropriate responses to light touch diffusely." (R. at 23, 622.) The reason provided for rejecting Plaintiff's symptom testimony, Plaintiff's ADLs, was a specific, clear, and convincing reason, but here, the ALJ has not shown it was supported by substantial evidence.

The ALJ's final reason for rejecting Plaintiff's testimony—that it was purportedly inconsistent with the objective medical evidence—also fails because, even if true, it cannot

form the sole basis for rejecting a claimant's testimony. *See Burch*, 400 F.3d at 682. Since the Court rejects the ALJ's other basis for rejecting Plaintiff's testimony, the ALJ's reliance on the objective medical evidence stands alone, and therefore, is inadequate. As such, the ALJ erred in rejecting Plaintiff's symptom testimony.

### C. The credit-as-true rule does not apply.

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 26.) The Court should credit evidence that was rejected during the administrative process as true and remand for an immediate award of benefits when (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited as true. *McCartey v. Massanari,* 298 F.3d 1072, 1076–77 (9th Cir. 2002). In this case, the ordinary remand rule, not the credit-as-true rule applies. First, as previously discussed, the ALJ provided legally insufficient reasons for rejecting symptom testimony. Nevertheless, because the ALJ did not correctly evaluate Plaintiff's symptom testimony, this case still presents evidentiary ambiguities that must be resolved. The ALJ erred in evaluating Plaintiff's ADLs and applying them to Plaintiff's symptom testimony, so it is unclear how Plaintiff's symptom testimony might impact the ALJ's overall finding if properly considered.

Accordingly, the Court will remand this matter for further development of the record and a new disability determination.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order, specifically, consideration of Plaintiff's symptom testimony.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 4th day of January, 2021.

                                      Douglas L. Rayes
                                      United States District Judge